```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF OHIO
                         EASTERN DIVISION


William Henson,                :

        Plaintiff,             :

     v.                        :      Case No. 2:12-cv-0624

Commissioner of Social         :      JUDGE PETER C. ECONOMUS
   Security,                          Magistrate Judge Kemp
                               :
        Defendant.
```

REPORT AND RECOMMENDATION

I. Introduction

Plaintiff, William Henson, filed this action seeking review of a decision of the Commissioner of Social Security denying his applications for disability insurance benefits and supplemental security income.  Those applications were filed on September 23, 2008, and alleged that plaintiff became disabled on July 1, 2006.

After initial administrative denials of his applications, plaintiff was given a hearing before an Administrative Law Judge on February 15, 2011.  In a decision dated March 9, 2011, the ALJ denied benefits.  That became the Commissioner's final decision on May 15, 2012, when the Appeals Council denied review.

After plaintiff filed this case, the Commissioner filed the administrative record on September 28, 2012.  Plaintiff filed his statement of specific errors on October 28, 2012.  The Commissioner filed a response on January 11, 2013.  No reply brief was filed, and the case is now ready to decide.

II. Plaintiff's Testimony at the Administrative Hearing

Plaintiff, who was 51 years old at the time of the administrative hearing and who has a tenth grade education (he left school during the eleventh grade), testified as follows. His testimony appears at pages 8-18 of the administrative record.

Plaintiff was asked by his attorney to explain why he believed he was disabled. In response, he said that it was hard for him to do anything, and that after he took his medication in the morning he went back to sleep. He also stated he was having trouble remembering things. The medication he was referring to was Tegretol, which he took twice a day. His hands would shake if he tried to do something like electronics work. He lost his last job because he fell asleep.

Plaintiff has a seizure disorder. He had not driven since being diagnosed with it. He was unsure if he was still having seizures. He admitted to past use of marijuana but said he had not been using it lately. He said he rarely left his house, and might go to the bank once a month. His wife did all of the shopping and household chores.

### III. The Medical Records

The medical records in this case are found beginning on page 226 of the administrative record. The pertinent records (those which relate to the issues raised in plaintiff's statement of errors, all of which concern either his mental limitations or his tremor and radiculopathy), can be summarized as follows.

There are a large number of treatment records confirming the existence of plaintiff's seizure disorder and the fact that he has been prescribed medication for that problem. Some of them also show issues with his left arm, usually described as muscle spasm. He had been complaining of forearm pain since 2004, and a test showed some loss of disc space at C5-6 with some mild neural foramina encroachment. An EMG done in 2004 was abnormal, showing isolated denervation in the left EDC (extensor digitorum communis) which might have represented a radial nerve injury or C7-8 radiculopathy. (Tr. 269).

Dr. Tanley saw plaintiff on May 15, 2006 for a consultative psychological examination. Plaintiff reported a five-year

history of seizures leading to depression, and side effects of medication. He said he had not worked since 2000 or 2001. He reported decreased appetite and increased sleeping. Dr. Tanley diagnosed a chronic adjustment disorder, rated plaintiff's GAF at 70, and saw no impairment in his ability to understand and follow simple instructions or to maintain attention to perform simple, repetitive tasks. He did think plaintiff had a mild impairment in his ability to withstand the stress and pressure of daily work. (Tr. 270-72).

Plaintiff was seen by Netcare in 2008 after an episode of depression. At that time, he reported regular use of marijuana until one week before the episode. He was having suicidal thoughts. His diagnoses included a major depressive disorder and cannabis abuse and at that time, his GAF was rated at 49. He was advised to see his primary care physician to obtain medication for depression. (Tr. 274-80).

Plaintiff's left arm pain apparently returned in 2009. He was given medication and told to follow up if the problem did not resolve. A note from January, 2009 showed that his depression and stress levels had improved. There were apparently some environmental factors causing him stress which changed at the same time. Studies done of his brain at that time were essentially normal.

In a report dated January 14, 2009, Dr. Hall, to whom plaintiff was referred by Dr. Gill, described plaintiff's seizure disorder and treatment plan, but also commented on his tremor. The tremor existed when doing fine motor tasks. Plaintiff declined both medication and a referral for treatment of the tremor. (Tr. 331-32). The tremor was later described by Dr. Eubank as "a fairly mild thing." (Tr. 375).

Allan Rain, a psychologist, also performed a consultative psychological evaluation, which took place on January 20, 2009.

Plaintiff did not appear to be a reliable historian and was confused during the evaluation. He seemed to be "quite depressed and defeated" as well as confused. His affect was flat and he had trouble understanding even basic questions. He performed very poorly on various tests and could not interpret proverbs. He did report going to the store by himself as well as other activities of independent living, but his test scores were inconsistent with someone's having that ability. Mr. Rain concluded that plaintiff had a number of marked impairments in his mental functioning attributable to his mood disorder and seizure disorder, which caused a "mental loss" affecting his ability to comprehend, attend to tasks, and withstand work pressure. Plaintiff's GAF was rated at 40 but his functional GAF was 70. Mr. Rain expressed concern about plaintiff's ability to manage benefits. (Tr. 338-43).

Dr. Finnerty, a state agency reviewer, also commented on plaintiff's mental limitations. He thought that Mr. Rain's assessment was not supported by the other records of mental health treatment and that plaintiff could do simple work tasks which did not require extended periods of concentration. (Tr. 347-49). Another state agency reviewer, Dr. Orosz, concurred with that assessment. (Tr. 366).

### IV. The Vocational Testimony

A vocational expert, Mr. Hartung, also testified at the administrative hearing. His testimony begins at page 18 of the record.

Mr. Hartung described and characterized plaintiff's prior work. Plaintiff worked as a stock clerk, which is classified as semiskilled and heavy, although plaintiff's particular stock clerk job was unskilled. Plaintiff's job as a housekeeper or cleaner was light and unskilled.

Mr. Hartung was asked some questions about a hypothetical

person who had no lifting restrictions but who was precluded from climbing ladders, ropes or scaffolds, who could not be exposed to hazardous machinery or unprotected heights, and who could understand, remember and carry out simple tasks and instructions, maintain concentration and attention for two-hour segments over an eight-hour work period, respond appropriately to supervisors and co-workers in a task-oriented setting, have casual and infrequent contact with others, and adapt to simple changes and avoid hazards.  With those restrictions, that person could, in Mr. Hartung's view, do plaintiff's past work as a housekeeper or cleaner.  However, someone with those restrictions who would also be off task for 20 percent of the work day could not be gainfully employed.

V.    The Administrative Law Judge's Decision

The Administrative Law Judge's decision appears at pages 31 through 40 of the administrative record.  The important findings in that decision are as follows.

The Administrative Law Judge found, first, that plaintiff met the insured requirements for disability benefits through September 30, 2007.  Next, plaintiff had not engaged in substantial gainful activity from his alleged onset date of July 1, 2006 through the date of the decision.  As far as plaintiff's impairments are concerned, the ALJ found that plaintiff had severe impairments including epilepsy and depression.  The ALJ also found that these impairments did not, at any time, meet or equal the requirements of any section of the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1).

Moving to the next step of the sequential evaluation process, the ALJ found that plaintiff had the residual functional capacity to perform work at any exertional level but that he could not climb ladders, ropes or scaffolds or be exposed to hazardous machinery or unprotected heights.   Further, he could

understand, remember and carry out simple tasks and instructions, maintain concentration and attention for two-hour segments over an eight-hour work period, respond appropriately to supervisors and co-workers in a task-oriented setting, have casual and infrequent contact with others, and adapt to simple changes and avoid hazards.  The ALJ determined that, with these restrictions, plaintiff could still perform his past relevant work.  Consequently, the ALJ concluded that plaintiff was not entitled to benefits.

VI.  Plaintiff's Statement of Specific Errors

In his statement of specific errors, plaintiff raises three issues.  He argues that the ALJ erred by improperly assessing his nonexertional mental limitations, by failing to assess his residual functional capacity properly, and by relying on vocational testimony given in response to an incomplete hypothetical question.  The Court generally reviews the administrative decision of a Social Security ALJ under this legal standard:

Standard of Review.  Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'"  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Company v. NLRB, 305 U.S. 197, 229 (1938)).  It is "'more than a mere scintilla.'"  Id.  LeMaster v. Weinberger, 533 F.2d 337, 339 (6th Cir. 1976).  The Commissioner's findings of fact must be based upon the record as a whole.  Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985); Houston v. Secretary, 736 F.2d 365, 366 (6th Cir. 1984); Fraley v. Secretary, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining whether the Commissioner's decision is

supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)); Wages v. Secretary of Health and Human Services, 755 F.2d 495, 497 (6th Cir. 1985). Even if this Court would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is supported by substantial evidence. Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

In his first assignment of error, plaintiff argues that the ALJ did not properly weigh the opinions of the various mental health experts. He asserts that the most weight should have been given to Mr. Rain's evaluation, and that the ALJ incorrectly determined that it was not supported by other evidence in the record when, in fact, the Netcare evaluation also indicated the presence of severe psychological symptoms. He also contends that the ALJ should have preferred Mr. Rain's evaluation to Dr. Finnerty's because Mr. Rain had the chance to examine plaintiff. In response, the Commissioner argues that the ALJ gave good reasons for choosing to assign great weight to Dr. Finnerty's and Dr. Tanley's views of the severity of plaintiff's psychological impairment.

Social security regulations generally advise an ALJ to give more weight to the opinion of an examining, as opposed to a non-examining, source. See 20 C.F.R. §404.1527(d)(1). However, an ALJ need not articulate reasons for rejecting the opinion of a non-treating source, even if that provider has examined the claimant, in the same manner as if the source were one of the claimant's treating physicians. Smith v. Comm'r of Social Security, 482 F.3d873, 876 (6th Cir. 2007). Further, the ALJ may choose to give more weight to a non-examining reviewer than one

who has examined the claimant if the circumstances so warrant. See SSR 96-6p ("In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources").  Overall, "the weight given a medical opinion depends upon the extent to which it is 'supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record'"). Cox v. Comm'r of Social Security, 295 Fed.Appx. 27, 35 (6th Cir. Sept. 30, 2008).

    Here, the ALJ explained why he chose not to credit Mr. Rain's evaluation in full in this way.  He noted that both Dr. Tanley and Dr. Finnerty believed plaintiff could carry out simple instructions and perform simple work tasks and that these findings were supported by the record as a whole and also by the findings made by Dr. Tanley when he examined plaintiff.  He also noted that Mr. Rain's functional assessment of plaintiff's GAF (70) was consistent with the record.  The balance of Mr. Rain's assessment was not, however, nor was it, in the ALJ's view, consistent even with Mr. Rain's own opinion of plaintiff's functional abilities.  (Tr. 39).

    The Court concludes that a reasonable person could, on this record, come to the same conclusion as did the ALJ.  Mr. Rain was the only person to suggest that plaintiff was suffering from organic brain syndrome.  He noted that the scores plaintiff produced on various tests were markedly different from what would be expected from a person with plaintiff's education and background.  He also noted the wide variation between his own assessment of plaintiff's abilities and the daily activities plaintiff reported.  There are no treatment records which show plaintiff ever reported the same type of gross mental dysfunction

to anyone else as he demonstrated in the interview with Mr. Rain, nor was he undergoing any course of treatment or counseling for a severe mental disorder. The various doctors' notes show that he had symptoms of depression and anxiety but that, with the exception of the single time he sought out Netcare's services, those conditions were managed well with medication or responded to positive changes in plaintiff's situation, to the point where he discontinued taking medication for depression and was still doing well. The record also does not reflect any significant occurrences between the time plaintiff saw Dr. Tanley and when he was evaluated by Mr. Rain which would explain such a dramatic deterioration in his condition. Given this record, the ALJ simply exercised his considerable discretion to choose among competing views of plaintiff's mental limitations, something he was both permitted and required to do. See, e.g., Tyrpak v. Astrue, 858 F.Supp. 2d 872, 887 (N.D. Ohio 2012)(ALJ evaluates the opinions of consultative examiners by "weighing the supportability and consistency of the opinions ..."); see also Hackle v. Colvin, 2013 WL 1412189, *9-10 (S.D. Ohio Apr. 8, 2013)(upholding a finding that an ALJ who, like the ALJ here, also relied on the opinion of Dr. Finnerty over that of a consultative examiner, explaining that "it was the ALJ's duty and province to resolve conflicts in the evidence"). Thus, the Court finds no merit in plaintiff's first assignment of error.

Plaintiff's second assignment of error addresses the ALJ's failure to include any limitations caused by his left arm pain and tremor either in his residual functional capacity finding or in the hypothetical question posed to the vocational expert. The ALJ not only did not find this impairment severe, but did not find that it imposed any limits on plaintiff's ability to work at all exertional levels subject to the non-exertional limitations caused by his seizure disorder and depression. The Commissioner responds that the record contains no evidence from which the ALJ

could have found any specific limitations resulting from this condition, and that a diagnosis, without more, is not evidence of a severe impairment.

Here, the Commissioner is correct that none of the medical records which mention arm pain or tremor - and these are few in number - ascribe any limitation of function to that condition. Plaintiff himself testified and told doctors that the tremor only affected his ability to do fine manipulation. Without an opinion that a particular impairment "caused any functional limitation on [a claimant's] ability to work," an ALJ is entitled to treat the impairment as non-severe and need not include any limitations resulting from it into the residual functional capacity finding. <u>Clark v. Astrue</u>, 2012 WL 3309690, *10 (N.D. Ohio June 5, 2012), <u>adopted and affirmed</u> 2012 WL 3309685 (N.D. Ohio Aug. 13, 2012). Further, as the Commissioner notes, it is the plaintiff' burden to show that he cannot perform his past work, and the plaintiff clearly did not produce any evidence that someone who has difficulty with fine manipulation, such as working with electronic circuits, cannot perform the usual job duties of a housekeeper or cleaner. The second assignment of error therefore provides no basis for either reversal or remand.

Plaintiff's third assignment of error is completely derivative of his first two. If the ALJ correctly assessed his residual functional capacity, the hypothetical question posed to the vocational expert was proper, and the ALJ was entitled to rely on the response in finding that plaintiff could still perform his past work. Because the Court has upheld the ALJ's residual functional capacity finding, the third assignment of error also provides no basis for reversing the ALJ's decision or remanding the case for additional proceedings.

## VII. <u>Recommended Decision</u>

Based on the above discussion, it is recommended that the plaintiff's statement of errors be overruled and that judgment be

entered in favor of the defendant Commissioner of Social Security.

## VIII.  Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

                                               /s/ Terence P. Kemp
                                               United States Magistrate Judge